UNITED STATES TITLE GUARANTY & INDEMNITY CO. v. MARKS et al.

(Supreme Court, Appellate Division, First Department.  December 7, 1906.)

1. CONTRACTS—CONSTRUCTION—SERVICES.

Defendant's executors employed plaintiff's assignor to obtain a reduction of any assessment that might be levied against her property for the improvement of a street, agreeing to pay therefor one-quarter of the reduction secured.  Prior to the contract the board of street opening and improvement had adopted a resolution providing that the entire cost and expense of the proceedings should be assessed on the property deemed to be benefited.  After the contract an estimate was submitted to the court for confirmation, proposing to assess testatrix's lots $1,557.60.  Confirmation of this report was denied, after which, through the efforts of plaintiff's assignor, a new resolution was adopted that one-half of the cost should be paid by the city, and an assessment finally made, taxing plaintiff's lots $576.22 each.  *Held,* that the proposed assessment, though not technically a "levy," was the one plaintiff's assignor was employed to reduce, and that plaintiff was entitled to one-quarter of the difference between such proposed assessment and that subsequently made.

2. EXECUTORS—CLAIMS—PERSONAL LIABILITY.

The fact that testatrix died before the assessment was finally confirmed did not affect the liability of the executors; her contract being a personal one, which ripened into an enforceable claim against her estate.

3. CORPORATIONS—CONSOLIDATION—CONTRACT FOR SERVICES—ASSIGNABILITY.

Where all the services rendered under a contract to obtain a reduction of a municipal improvement assessment were completed before the corporation employed to perform the same was merged in plaintiff corporation, it was no defense to plaintiff's claim to recover for such services that the contract was personal, and not assignable.

Appeal from Trial Term, New York County.

Action by the United States Title Guaranty & Indemnity Company against Louis A. Marks and others, as executors of the will of Esther B. Marks, deceased.  From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, they appeal.  Affirmed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Jacob Fromme, for appellants.
Adolph C. Hottenroth, for respondent.

SCOTT, J.  Defendants' testator, Esther B. Marks, was on September 30, 1897, the owner of seven lots on East 138th street, in the city of New York, and on that day executed the contract upon which this action is brought.  That contract, which was apparently upon a printed form, contained some blanks which were not filled up, but, as it is, it sufficiently embodied the agreement.  It contained a caption, "In the Matter of the Reduction of the Assessments on West 138th Street," the word "West" being concededly intended to be "East."  It recited that Mrs. Marks, owner of the lots, "proposed to be assessed for the above widening and improvement," authorized the People's Guaranty & Indemnity Company (assignor of plaintiff), by its attorneys, to represent her "to reduce any assessment that may be levied against her property," and for the services rendered and disbursements paid or in-

〇

curred she agreed to pay the People's Guaranty & Indemnity Company one-quarter of the reduction made; it being stipulated that no charge should be made by said company or their attorneys for such services or disbursements unless a reduction should be obtained. It is important to observe that this contract did not purport to deal with or refer to any existing assessment. It recited that an assessment was proposed to be laid, and the service contracted for was the reduction of any assessment that might thereafter be levied against the property. It appears that the improvement had been projected, and that on September 6, 1894, the board of street opening and improvement, the board then having jurisdiction in the premises, had adopted a resolution providing that "the entire cost and expense of such proceedings shall be assessed upon the property deemed to be benefited thereby."

The situation, therefore, as it existed when the contract was made, was that East 138th street was to be widened, and that Mrs. Marks' property, along with other property deemed to be benefited, was to bear the entire cost and expense thereof, and it is with reference to this situation that the contract must be construed. It appears that commissioners of estimate and assessment, appointed to ascertain and assess the cost of the improvement, made a preliminary or tentative estimate in February, 1898, and a final report dated February 26, 1900, which was presented to the Supreme Court for confirmation on July 27, 1900. Confirmation was denied and the matter referred back to the commissioners of estimate and assessment for further hearing and a new report. In the report submitted to the court on July 27, 1900, each of Mrs. Marks' lots was proposed to be assessed for $1,557.60 as its proportionate share of the cost and expense of the improvement, and, although the fixation and report of such an assessment cannot be said to amount legally or technically to the "levy" of an assessment, we are of opinion that a fair construction of the contract requires us to treat this proposed assessment as the one of which the People's Guaranty & Indemnity Company were employed to obtain a reduction. It certainly was an amount for which the property was "proposed to be assessed," and, if we should construe the words "any assessment that may be levied" against the property as referring only to an assessment finally confirmed and filed in the Comptroller's office so as to become a binding lien upon the property, it would render the contract futile and meaningless. On March 14, 1900, after the date of the final report of the commissioners of estimate and assessment, but before its presentation to the court, the board of public improvements, which under the charter had succeeded to the powers of the board of street opening and improvements, adopted a resolution rescinding the resolution adopted by the latter board on July 6, 1894, and providing that:

"One-half of the entire cost and expense of such proceedings shall be assessed upon the property deemed to be benefited thereby, and one-half shall be borne and paid by the city of New York."

It appears that the attorneys for the People's Guaranty & Indemnity Company, by its attorneys, and as representing Mrs. Marks, were active and instrumental in persuading the board of public improvements to adopt this resolution, which at once relieved her property from one-

half the burden which it was prospectively bound to bear at the time that the contract with the company was entered into. It also appears that the attorney for the company, acting in behalf of Mrs. Marks, appeared before the commissioners of estimate and assessment and successfully presented proof and arguments looking to a further reduction of the assessment on her lots. The result of all these efforts was that on March 8, 1902, the commissioners of estimate and assessment filed in the bureau of street opening an abstract of their supplemental and amended estimate and assessment, and gave notice under the statute that objections might be made thereto on or before March 31, 1902, and that they would hear such objections on April 2, 1902. After hearing such objections, and on July 8, 1902, the commissioners made a final report which was presented to the Supreme Court for confirmation, and was confirmed on November 20, 1902. By this final report each of Mrs. Marks' lots was assessed for $576.22, and it is for one-quarter of the difference between the amount thus assessed and the original proposed assessment of $1,557.60 per lot that the plaintiff has recovered judgment.

We think that this judgment should not be disturbed. The evidence is clear that through the active efforts of the attorneys for the People's Guaranty & Indemnity Company a large proposed assessment upon Mrs. Marks' property was most materially reduced, and there is nothing to justify the assumption that such reduction would have been effected without such efforts on her behalf. She thus obtained precisely what she had contracted for, as we read the contract. The fact that Mrs. Marks died on March 23, 1902, before the assessment was finally confirmed, does not affect the liability of the executors. Her contract was a personal one, and the claim upon it, if valid, is now one against her executors, and not against her heirs or devisees. The work for which she contracted had been substantially completed before her death, for the reduction of the assessment had been secured, so far as the commissioners of estimate and assessment were concerned, and the preliminary abstract showing the results of their deliberation had been completed and filed. The very slight reduction of the assessment between that shown by the preliminary estimate and that contained in the final report is so insignificant as to justify the assumption that it resulted from a mere correction of calculations in the distribution of the entire assessment. There is no force in the suggestion that the contract, being one for personal services, was not assignable, because on September 10, 1902, when the merger is said to have been effected between the People's Guaranty & Indemnity Company and this plaintiff, the services contracted for had all been performed, and what passed to plaintiff was not a contract for services to be performed, but a claim for services which had been rendered.

Judgment and order affirmed, with costs.    All concur.